UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBRA HERRINGTON and SABRINA HARRIS on behalf of KYLE JOSEPH COLLINS,<br>    *Plaintiffs*,<br><br>    *vs.*<br><br>CITY OF GREENWOOD, GREENWOOD POLICE DEPARTMENT, JAY ARNOLD, ERIC MCELHANEY, JOSEPH PITCHER, and CHARLES HENDERSON,<br>    *Defendants*. | 1:09-cv-00273-JMS-DML |

### **ORDER**

Presently before the Court is Defendants' motion for summary judgment (the "Motion for Summary Judgment").[1] [Dkt. 60.]

#### **BACKGROUND**[2]

Around 11:00 p.m. on the evening of February 21, 2007, Eric McElhaney, an officer of the Greenwood Police Department, observed a vehicle traveling approximately 60 miles per hour on a road with a posted speed limit of 40 miles per hour. [Dkt. 60-2 at 8.] Detective McElhaney[3] followed the speeding vehicle and turned on his flashing lights. The driver, Michael Hatchett, pulled over into a parking lot. [*Id.* at 10-11.] Detective McElhaney asked both Mr.

---

[1] The Court notes that Plaintiff's brief in opposition to the Motion for Summary Judgment [dkt. 68] does not contain a "Statement of Material Facts in Dispute" as required by Local Rule 56.1(b). The Court cannot discern whether this is a failure on Plaintiffs' part (which is not excusable), or an acknowledgment that Plaintiffs do not present evidence to dispute the circumstances of the shooting, but rather argue for different inferences to be drawn from those circumstances. The Court will give Plaintiffs the benefit of the doubt, and consider it the latter.

[2] Unless otherwise indicated, the facts that follow are undisputed in the evidence submitted for the Motion for Summary Judgment.

[3] At the time of the incident, Eric McElhaney was an officer; he has since become a detective. [Dkt. 60-2 at 19.] This Court will refer to him here using his current rank.

1

Hatchett and his passenger, Kyle Collins, for identification. [*Id.* at 11-12.] Upon checking their identification with the dispatcher, Detective McElhaney discovered that Mr. Hatchett did not have a valid driver's license and had multiple outstanding warrants for failure to appear on summonses he had received for driving without a valid license. [*Id.* at 19.]

Detective McElhaney radioed a nearby officer, Jay Arnold, to come and help him arrest Mr. Hatchett. [*Id.* at 20.] After Officer Arnold arrived, Detective McElhaney went around to the driver's side of the vehicle and asked Mr. Hatchett to step out. [*Id.* at 19-21.] Mr. Hatchett cooperated, and Detective McElhaney handcuffed him. [*Id.* at 21.]

Meanwhile, Officer Arnold went to the passenger side to watch Mr. Collins, who was talking on his cell phone and refused to look out when Officer Arnold knocked on the window. [*Id.* at 20, Dkt. 60-1 at 17.] Officer Arnold then requested that Mr. Collins put down his cell phone, get out of the vehicle, and put his hands on the roof of the vehicle, which Mr. Collins did. [Dkt. 60-1 at 17.] Officer Arnold asked Mr. Collins if he was carrying any weapons, and Mr. Collins said "No." [*Id.* at 18.] Officer Arnold asked Mr. Collins's permission to perform a pat-down search for officer safety, but Mr. Collins refused, stating he suffered from post-traumatic stress disorder ("PTSD"). [*Id.*] Officer Arnold repeated his request to pat Mr. Collins down, explaining that he intended to release Mr. Collins once he was sure that Mr. Collins was unarmed. [*Id.* at 18-19.] Mr. Collins replied with the words "You fucking cops" and further words to that effect. [Dkt. 60-2 at 21.] Officer McElhaney heard this and became alarmed; he left Mr. Hatchett sitting at the rear of the vehicle and went to Officer Arnold's assistance. [*Id.*]

As they were patting Mr. Collins down, Detective McElhaney and Officer Arnold discovered Mr. Collins had some brass knuckles in his back pocket. [Dkt. 60-1 at 18.] The brass knuckles belied Mr. Collins's previous statement that he had no weapons, so Officer Arnold

2

arrested Mr. Collins and began to handcuff him. [Dkt. 60-2 at 26.] However, while Officer Arnold was doing so, Mr. Collins punched Detective McElhaney in the face and tried to escape. [*Id.*] A short chase ensued, after which both Detective McElhaney and Officer Arnold attempted to handcuff Mr. Collins with no success. [*Id.* at 27, 31.] Detective McElhaney threatened to use a taser to subdue Mr. Collins, but before he could do so, Mr. Collins shot him in the legs with a gun that had gone undiscovered in the pat-down search. [*Id.* at 31, 38, 48.]

After being shot, Detective McElhaney rolled away from Mr. Collins. [*Id.* at 52.] Officer Arnold attempted to call for help on his radio, but one of the bullets had damaged it, and it was not working. [Dkt. 60-1 at 64-65.] Mr. Collins was still firing at them, so both Detective McElhaney and Officer Arnold shot him several times. [*Id.* at 34; Dkt. 60-2 at 51-52.] Despite his gunshot wounds, Mr. Collins did not stop shooting; Detective McElhaney believed that he might have been wearing a bullet-proof vest, although no evidence of this was ever discovered. [Dkt. 60-2 at 53, 63.] Finally, Detective McElhaney shot Mr. Collins in the head. [*Id.* at 52.] As a result of his gunshot wounds from this encounter, Detective McElhaney lost parts of his intestines, liver, and lungs, as well as part of both legs. [*Id.* at 18.]

Mr. Collins died from his injuries. [Dkt. 69-1 at 1.] Personal representatives of his estate, Debra Herrington and Sabrina Harris, filed this action pursuant to 42 U.S.C. § 1983 and the Indiana Wrongful Death Act, alleging wrongful death, failure to train, and excessive force against both Officer Arnold and Detective McElhaney, as well as the City of Greenwood, the Greenwood Police Department, Police Chief Joseph Pitcher, and Mayor Charles Henderson. [Dkt. 1-1.] Defendants have moved for summary judgment on all claims. [Dkt. 60.]

## DISCUSSION

A motion for summary judgment asks the Court to decide that a trial is unnecessary because it could only come out one way—in the moving party's favor. Thus, before granting a

motion for summary judgment, the Court must find that there is no dispute over the material facts and, based only upon those undisputed material facts, that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When deciding whether to grant the motion, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).

### I. Violation of Mr. Collins's Constitutional Rights

To bring a successful claim under 42 U.S.C. § 1983, the plaintiff must prove two elements: 1) a violation of his constitutional rights 2) committed by a person acting under color of state law. 42 U.S.C. § 1983. Nonetheless, even if a plaintiff can present an otherwise valid claim, § 1983 provides defendants with qualified immunity if a reasonable person would not have known that the constitutional violation was unlawful. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

Although presented slightly differently in the briefs, Plaintiffs here allege three violations of Mr. Collins's constitutional rights: A) the pat-down search, B) the seizure of Mr. Collins's brass knuckles and his subsequent arrest, and C) the use of deadly force. [Plaintiff's Brief at 13-14.] None of those incidents in fact constituted a constitutional violation, so the claim that plaintiffs have brought under § 1983 necessarily fails.

### A. Pat-Down Search

Ms. Herrington and Ms. Harris argue that the initial search of Mr. Collins was unconstitutional for two reasons: 1) the officers had no articulable suspicion to justify the pat-down search of Mr. Collins and 2) even if they did, Mr. Collins told the officers he had PTSD and asked them not to touch him. [Plaintiff's Brief at 9-10.]

### 1. Articulable Suspicion for the Pat-Down Search

Ms. Herrington and Ms. Harris argue that the Supreme Court's decision in *Terry* requires an officer to have an articulable suspicion that a passenger is armed before ordering him to exit the vehicle[4] for the purpose of a protective pat-down search. [Plaintiff's Brief at 13.] Defendants correctly point out that the Seventh Circuit has held—as have many other courts— that officers can perform a pat-down search of an arrestee's companion if the arrestee is "within the immediate vicinity" and "capable of accomplishing a harmful assault on the officer." *U.S. v. Simmons*, 567 F.2d 314, 318-319 (7th Cir. 1977) (quotations omitted); *see also U.S. v. Poms*, 484 F.2d 919 (4th Cir. 1973); *U.S. v. Patterson*, 885 F.2d 483 (8th Cir. 1989); *U.S. v. Berryhill*, 445 F.2d 1189 (9th Cir. 1971); *U.S. v. Patterson*, 447 F.2d 424 (10th Cir. 1971).

Mr. Collins was a passenger in Mr. Hatchett's vehicle [dkt. 60-2 at 11]; therefore, he was in the "immediate vicinity" of Mr. Hatchett just before Mr. Hatchett was arrested. *U.S. v. Mitchell*, 82 F.3d 146, 152 (7th Cir. 1996) (court upheld search of arrestee's vehicle—even after arrestee had been removed and placed in the police car—because items therein were within arrestee's reach immediately before the arrest). Additionally, the potential harm from a firearm—which as it turns out Mr. Collins did in fact possess—constituted a sufficient threat to the officer's safety. Although Ms. Herrington and Ms. Harris argue that *Simmons* is inapplicable here [Plaintiff's Brief at 13], they have presented no authority suggesting that *Simmons* is no longer binding precedent in this Circuit. Therefore, reasonable officers could have reasonably

---

[4] To the extent, if any, that Ms. Herrington and Ms. Harris claim that reasonable suspicion was required in order for the police to ask Mr. Collins to get out of the car, the Court notes that the Supreme Court has held that police officers may order passengers to exit the vehicle pending the completion of a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997).

believed that they had the authority to request that Mr. Collins exit the car and submit to a protective pat-down search.[5]

However, to the extent that Ms. Herrington and Ms. Harris argue that the majority of case law supports the use of the stricter standard articulated in *U.S. v. Kenerson*, 585 F.3d 389, 392 (7th Cir. 2009) ("a protective pat-down search…is appropriate only if the agents have at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the agents or others....") (quotations omitted), the Court notes that the pat-down search of Mr. Collins survives scrutiny under that standard as well. The reasonableness of the officer's suspicion must be determined "based on the totality of circumstances, not by considering each factor in isolation." *Id.* (citation omitted).

Although Ms. Herrington and Ms. Harris have correctly pointed out that the officers did not testify that they saw any bulges in Mr. Collins's clothing, or that he made any furtive gestures [Plaintiff's Brief at 13], neither of those elements are required for reasonable suspicion. "A police officer conducting a stop is not required to precisely and individually articulate the facts that added up to suspicion in his mind." *U.S. v. Brown*, 232 F.3d 589, 594 (7th Cir. 2000) (quotations omitted). Furthermore, the officer does not have to be certain that the suspect is armed, as long as he has a reasonable belief that his safety or the safety of others is at risk. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Factors that can support that reasonable belief include a suspect's refusal to make eye contact or speak to the officer, a suspect's belligerent attitude or behavior, and the time and location of the encounter. *United States v. Ruidiaz*, 529 F.3d 25, 27 (1st Cir. 2008) (finding reasonable suspicion when, among other factors, suspect screamed a

---

[5] Even if the legality of the pat-down search were uncertain, that uncertainty would have to be resolved in Defendants' favor. *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) (holding that if the law is unclear, qualified immunity should attach).

profanity upon being touched by the officer); *Brown*, 232 F.3d at 593-94 (finding reasonable suspicion where the subject was unresponsive to an officer's question, leading the officer to think he would be uncooperative); *U.S. v. Oglesby*, 597 F.3d 891, 895 (7th Cir. 2010) (finding reasonable suspicion where the encounter occurred at night and the suspect looked from side to side and acted in an evasive manner).

Officer Arnold testified that Mr. Collins refused his initial request to put down his cell phone and exit the car. [Dkt. 60-1 at 19-20.] Also, Mr. Collins stared straight ahead and avoided making eye contact with Officer Arnold. [*Id.*] While Officer Arnold was talking to him, Mr. Collins became belligerent and referred to the officers using profanity, which caused Detective McElhaney enough concern that he immediately went to help Officer Arnold. [Dkt. 60-3 at 1; dkt. 60-2 at 21.] Finally, the encounter occurred at nearly 11:00 p.m. [Dkt. 60-3 at 1.] These four elements, taken together, amount to justification for the officers' reasonable suspicion that Mr. Collins could pose a danger to them.

### 2. PTSD

Ms. Herrington and Ms. Harris have argued that police officers may not conduct pat-down searches of individuals with PTSD. Unfortunately, they have not cited any authority supporting their argument. Their inability to find clearly controlling authority for their claim means it is doomed as a constitutional violation, and that they cannot overcome qualified immunity with respect to it. *Mitchell*, 472 U.S. at 535.

Indeed, given the potential impossibilities and heightened danger if to the police if they had to comply with individuals' requests—imagine trying to arrest someone without touching him—some cases emerge that are directly contrary to plaintiffs' position. *Cf. Plakas v. Drinski*,

7

19 F.3d 1143, 1144 (7th Cir. 1994) (upholding arrest of individual who asked not to be handcuffed behind his back for medical reasons even though the officers did just that).

### B. Seizure of Brass Knuckles and Arrest

Ms. Herrington and Ms. Harris argue that because it is not illegal to possess brass knuckles, it was improper for Officer Arnold to seize them, especially in the absence of any evidence that he felt threatened by them. [Plaintiff's Brief at 14.] However, this argument ignores two key points.

First, brass knuckles are a deadly weapon, *Phelps v. State*, 669 N.E.2d 1062 (Ind. App. 1996), and thus Officer Arnold was entitled to seize them after the pat-down search and retain them, at least until he decided whether to arrest Mr. Collins. *Howard v. State*, 818 N.E.2d 469, 476 (Ind. App. 2004) (upholding protective seizure of a knife for officer safety during a traffic stop, even though driver could legally possess it).

Second, because brass knuckles are not only a weapon, but a deadly one at that, Officer Arnold could seize them as evidence that Mr. Collins committed the crime of false informing. Ind. Code § 35-44-2-2(d) (proscribing giving false information in the official investigation of a crime). The undisputed evidence is that, upon questioning by the officers, Mr. Collins told them that he had no weapons on him. Although Ms. Herrington and Ms. Harris have argued that the officers didn't have sufficient grounds to arrest Mr. Collins, the Court finds to the contrary. They had probable cause to arrest him for the crime of false informing. *Taylor v. State*, 891 N.E.2d 155, 159 (Ind. App. 2008) (finding probable cause to arrest defendant for false informing when police officer believed defendant's answers were untrue). Alternatively, under a qualified immunity analysis, the Court finds that Officer Arnold was entitled to a reasonable belief that he could seize the brass knuckles.

Additionally, the Court notes that even had the arrest been improper, Mr. Collins was not entitled to use force, let alone deadly force, to resist it. *Cole v. State*, 878 N.E.2d 882, 886-87, (Ind. Ct. App. 2007) (finding that "a private citizen may not use force in resisting a peaceful arrest by an individual he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful"); *see also U.S. v. Pryor*, 32 F.3d 1192, 1195-96 (7th Cir. 1994) (finding "self-help" responses to unlawful arrests to be impermissible; citizens must "endure even an unlawful arrest without resorting to force, on the ground that the indignity and inconvenience if the arrest turns out to be improper are less serious than the injuries…engendered by encouraging suspects to make their own snap judgments about the legality of official demands.") The Court now turns to the real crux of the case: the officers' use of deadly force.

### C.  Use of Deadly Force

To survive constitutional scrutiny, the force used on a suspect, including deadly force, must be objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness is determined in light of the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Ms. Herrington and Ms. Harris raise several objections to the use of deadly force against Mr. Collins: 1) the number of times the officers shot Mr. Collins was excessive, 2) recent newspaper articles and an affidavit show that the force was not used in good faith, 3) the officers' shooting of Mr. Collins was akin to the execution of Gary Gilmore because deadly force was not the only option available to the officers in the situation.

### 1. Number of Shots

Ms. Herrington and Ms. Harris allege that the sole fact that the officers shot Mr. Collins fifteen times demonstrates that the force they used was "unconstitutionally excessive." [Plaintiff's Brief at 14.] However, "[t]he number of shots by itself cannot be determinative as to whether the force used was reasonable." *Elliott v. Leavitt*, 99 F.3d 640 (4th Cir. 1996). What matters is the "totality of the circumstances." *Graham*, 490 U.S. at 396.

Here, the undisputed facts show that Mr. Collins was the first to start shooting and fired at least six shots that actually hit their targets; he shot Detective McElhaney five times and Officer Arnold once. [Dkt. 60-1 at 64, 60-2 at 66.] Detective McElhaney testified that he continued shooting at Mr. Collins because Mr. Collins continued to shoot at him and at Officer Arnold. [*Id.* at 62, 66.] Additionally, Detective McElhaney thought that Mr. Collins might be wearing a protective vest, because the officers' shots did not stop his attack. [*Id.* at 63, 65.] Up until the moment that Detective McElhaney fired the final shot, Mr. Collins was still attacking the officers, despite the non-fatal wounds he had sustained. [*Id.* at 39-40.] In view of all of these circumstances, it was reasonable as a matter of law for the officers to continue firing at Mr. Collins until he stopped firing at them, and the number of shots alone does not raise an issue of material fact.

### 2. Newspaper Articles and Affidavit

Ms. Herrington and Ms. Harris urge the Court to find excessive force on the evidence of a newspaper article and an affidavit from Mr. Donald G. Davis, the owner of a local gun store. [Dkt. 69-2.] But Defendants appropriately object to the admissibility that evidence. [Plaintiff's Reply at 5-7.] The newspaper articles are hearsay to the extent that they are offered for their

truth.[6]  Fed. R. Evid. 801(c), 802.  Furthermore, expert testimony as to whether a particular use of force is reasonable is generally inadmissible at trial.  *See Thompson v. City of Chicago*, 472 F.3d 444, 457-58 (7th Cir. 2006) (holding expert testimony as to whether or not officers used excessive force was inadmissible at trial because its "probative value" was "substantially outweighed by the danger of unfair prejudice").

To the extent that any expert testimony could conceivably be appropriate, Mr. Davis could not offer it because Mr. Davis, according to Plaintiffs, is an expert on guns, not on the law of excessive force.  [Dkt. 69-2 at 1.]  Additionally, Mr. Davis does not claim to have witnessed the events at issue in this case.  [*Id.*]  Therefore, his testimony as to whether the officers used excessive force against Mr. Collins would be inadmissible, and the Court sustains Defendants' objection, and declines to consider it here.

### 3.  Self-Defense; Other Options Available to the Officers

Finally, as an overarching theme, Ms. Herrington and Ms. Harris have attempted to characterize the officers' decision to use deadly force as a "Gary Gilmore-style" execution.  [Plaintiff's Brief at 12.]  However, a police officer who "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer" may use deadly force in self-defense.  *Plakas*, 19 F.3d at 1146; *see also Tennessee v. Garner*, 471 U.S. 1, 3 (1985).  Ms. Herrington and Ms. Harris argue further that the officers had other options that they could have attempted instead of shooting Mr. Collins.  [Plaintiff's Brief at 10.]  However, "[t]here is no precedent in this Circuit (or any other) which says that the Constitution requires law enforcement officers to use all feasible alternatives to avoid a situation where deadly force

---

[6] To the extent that three of the articles are offered to show that Mr. Davis is an expert in gun safety [dkts. 69-4, 69-5, and 69-6.], they are admissible for that purpose, but because expert testimony as to reasonableness of force is generally inadmissible, the articles are irrelevant.

can justifiably be used." *Plakas*, 19 F.3d at 1148. On the contrary, "where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first." *Id.*

Here, the undisputed evidence establishes that after Mr. Collins assaulted Officer Arnold and attempted to evade arrest, Officer Arnold threatened to use a taser (a non-lethal weapon) on Mr. Collins. [Dkt. 60-1 at 28, 30.] In response, Mr. Collins began shooting at the officers with a handgun. [*Id.* at 31-33.] Officer Arnold and Detective McElhaney were both in danger of and were subject to serious harm from Mr. Collins's gunfire; indeed, Detective McElhaney actually suffered permanent injuries. [Dkt. 60-2 at 18-19.] Detective McElhaney testified that he shot Mr. Collins in an effort to "stop him from killing me or my partner." [*Id.* at 39.] Officer Arnold also testified that he was trying to protect himself and his partner after Mr. Collins shot Detective McElhaney. [Dkt. 60-1 at 63.] Therefore, the Court finds that the officers were well within their rights to use deadly force to defend themselves. Even if Ms. Herrington and Ms. Harris are correct that the officers could have tried alternative means to subdue Mr. Collins, the officers were not constitutionally required to exhaust all such alternatives before employing deadly force. Indeed, if the officers could not use deadly force in this situation, when they are actually being fired upon and shot, it is unclear when they could ever use deadly force.

## II. Municipal Liability for Failure to Train

Ms. Herrington and Ms. Harris argue that the City of Greenwood should be held liable for failure to train Officer Arnold and Detective McElhaney. [Plaintiff's Brief at 18.] In order to bring a successful claim for failure to train, Ms. Herrington and Ms. Harris must show two things: first, that Mr. Collins was deprived of some constitutional right, and second, that the deprivation was proximately caused by "an express municipal policy, widespread custom, or

deliberate act of a decision-maker with final policy-making authority…" *Ienco v. City of Chicago.*, 286 F.3d 994, 998 (7th Cir. 2002).

As shown in the above analysis, Ms. Herrington and Ms. Harris have failed to show that Mr. Collins suffered any deprivation of his constitutional rights. Therefore, their claim of municipal liability for failure to train necessarily fails.

Furthermore, the Court cannot fathom the training that would prepare police officers to react differently to a situation like the instant one. Mr. Collins shot first. Both Detective McElhaney and Officer Arnold had been wounded. Non-fatal shots that struck Mr. Collins did not stop him from continuing to shoot. To expect the officers to be trained to handle such a dire circumstance differently, or to employ non-violent or even non-lethal force in response to Mr. Collins's potentially lethal action is unreasonable and not constitutionally required.

### III. Claim for Wrongful Death Under Indiana State Law

Where, as here, all federal claims in a case are dismissed (and no other basis for original jurisdiction exists), "the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008). While considerations of "judicial economy, convenience, fairness and comity" can overcome that presumption, they have not done so in this case. With respect to judicial economy in particular, the Court notes that any efficiencies obtained by resolving the state law claims here would be minimal; the parties have fully completed discovery and have fully briefed a motion for summary judgment on the state law issues. The Court is confident that they can, with very little effort, revise those briefs in short order and resubmit them to the state courts which are, rather than the federal judicial system, preferable venues for resolving state law issues.

Accordingly, the Court will remand the claim for wrongful death under Indiana state law back to the Marion Superior Court, where Plaintiffs originally filed this action.

### CONCLUSION

The Motion for Summary Judgment is **GRANTED** as to all claims arising under federal law. The remaining state law claims are **REMANDED** back to the Marion Superior Court.

07/30/2010

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF only:**

Aimee Rivera Cole
SMITH FISHER MAAS & HOWARD
arivera@smithfisher.com

Loren Jay Comstock
lorenjcomstock1@yahoo.com

Kimberly E. Howard
SMITH FISHER MAAS & HOWARD, P.C.
khoward@smithfisher.com

Daniel Joseph Layden
WILLIAMS BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com

Michael Edward Morken
mmorken@hotmail.com